Good morning Judge Kuczynski, members of the en banc court. I'm Ben Weisner here on behalf of the Plaintiffs' Appellants and I'm joined at council table by co-counsel Stephen Watt, Hope Metcalfe, Julia Maas, Anne Brick, and Jameel Jaffer. And with the court's permission, I'd like to reserve five minutes for rebuttal. Your Honor, this case arrives in this court in a dramatically different posture than it was filed some two years ago. The government has now declassified documents describing its most controversial interrogation techniques. The president has expressly prohibited abusive interrogations and secret detentions. And foreign governments have both admitted their own culpability in these actions and even provided redress to some of these same victims. Nevertheless, the government insists that this lawsuit must be terminated before it has even begun because the former CIA director, the very individual whose agency perpetrated the horrific acts at the center of this lawsuit, has determined that discussion in this court of facts known throughout the world will somehow harm the nation. The government's theory of state secrets is as dangerous as it is far-reaching. By the government's reasoning, the CIA can engage in kidnapping and torture, declare its own crimes, state secrets, and thereby avoid any judicial scrutiny or accountability for conduct that is illegal in all circumstances. If that theory becomes the law, it will do tremendous harm not only to victims of torture and other illegal executive misconduct, but to democratic principles as well. Could you, may I just ask you to focus in your remarks on one point that's troublesome. You acknowledge that there has been redress apparently given to some of these petitioners. You, I assume, acknowledge that there is a state secrets privilege so that cases can be terminated without relief. What role does the fact of non-judicial relief play in the analysis? In other words, you're saying this is a threat to the democracy, but nonetheless, there are mechanisms outside the judicial process. Could you just include that as part of your consideration? Yes, I mean Judge Hitcher, the mechanisms that I was discussing right now, in particular, are, for example, proceedings in the country of Sweden. The country of Sweden has provided $450,000 in compensation to one of our plaintiffs, Achmed Igiza, for the Swedish government's very secondary role in Mr. Igiza's transition from Egypt to Egypt, sorry, from Sweden to Egypt, where he was brutally tortured. I don't think that the fact that there is other redress available for him in another country means that this... If I have redress available within the United States, say through Acts of Congress, other than through the judicial branch. Well, I don't know what other redress is available through Acts of Congress or any other U.S. mechanism. I have not heard of any. It's called a private bill. You could go to the Court of Federal Claims and seek a Invoke their advisory jurisdiction or you could go directly to Congress and seek a private bill. I'd have to be kind. It seems to me, Judge Kaczynski, that the extremely remote possibility that some... No, don't talk to me. Talk to Judge Fischer. I was trying to explain to you what I think Judge Fischer was asking about. There are other means through the political process. Well, I think if that's what you have in mind, I think that kind of relief is extremely, extremely remote. And moreover, I think it's emphatically the role of the courts to provide redress to individual victims of executive misconduct. Didn't help the guy in Taunton. What was the guy, Johnson? Didn't help the guy in Taunton. Well, the guy in Taunton was already dead. No, his family. Right. Well, I mean, I think that Taunton and Tennant describe a very unique category of cases where... Well, but it does show that there are there are alleged wrongs for which there is no judicial remedy and that is far different from saying there's no remedy at all. The Congress passes private bills all the time. You're familiar with the Court of Federal Claims advisory jurisdiction, perhaps. Yeah. You know, you go in there, it's in the nature of a trial, and then you can, they recommend that Congress pass a bill for matters outside the statute of limitations or wrongs that somehow are not covered by statute. That is a possible avenue of relief. I mean, do you have any remedy to which you have a right? Well, I would like to make a few responses to that. Thank you, Judge Canvey. I mean, the first is that, you know, Taunton really presents a situation where the plaintiff has voluntarily entered into a private relationship knowing at the outset that it's not going to be an enforceable contract. That's quite different from our plaintiffs who were involuntarily snatched off the chain to the force of planes and flown to countries where they were tortured. So the difference between a buyer beware rule and a victim beware rule in this case, and I would also say that the nature of the claims should bear on this. You know, Reynolds was a tort case, Taunton is a contract case. These are torture cases that really go to the very heart of who we are as a country and having these kinds of claims remain unadjudicated after this much time, I think does real harm and does a different kind of harm. I want to address the government's argument that I think is a formal argument, but that really animates its discussion, and that is that the CIA and its contractors cannot, as a rule, confirm or deny their roles in allegedly clandestine activities. But I think the truth is that they do so routinely when it suits their interests, and they don't do so when they're brought to court. And in the last week alone, we've seen evidence of that. In response to published reports that Blackwater, for example, had assisted the CIA in detaining and transporting high-value targets in Iraq and Afghanistan, Blackwater spokesman said on the record in the New York Times that company personnel were never involved in CIA rendition flights which transfer terrorism suspects to other countries. Following the day, the CIA spokesperson said on the record in the New York Times, at this time, Blackwater is not involved in any CIA operations other than in a security or a support role. Now, that wasn't so difficult. Both the CIA and one of its contractors were able to make very specific denials about very specific allegations that are, in fact, the same allegations that are at issue in this case, and the sky apparently did not fall. But when we go into court, all of a sudden, their refusal, their categorical refusal to make the same kind of confirmation, the same kind of denial, is placed before us as a bar to any adjudication, and in fact, it's a non-judicial ability. I'm not sure I understand that argument. I mean, the government is free to declassify and doesn't declassify information all the time for a loss of context, but the classification authority is the government's and not that of the courts. We can't declassify things. We don't have authority to do that. So I'm not sure why you find it persuasive that the fact the government has chosen perhaps to declassify something in one case speaks to a situation involving a different case or a different situation. To me, I find it persuasive, Judge Kuczynski, because it seems to me that their argument is categorical and not specific, that the argument that they're making is not simply that confirming or denying Jefferson's role in this case would cause concrete harm, but that they cannot do so categorically because of some future case. And that's certainly the argument that is made in the public declaration that I've seen from former CIA Director Hayden. You don't even need to refer to press releases back and forth involving people not involved in this case. The Department of Justice has announced that it will try Khalid Sheikh Mohammed and his team to try those cases on an evidence-by-evidence basis. They're making no assertion of state secrets as an immunity doctrine. Prior to that, they announced that CIA agents who exceeded the boundaries of the YBU memos earlier might be subject to prosecution. I assume if those cases go forward, no one will assert immunity on behalf of the government. They'll be tried on an evidence-by-evidence basis. Why can't this case be tried? Well, I think that's exactly right. And we raised that in our brief as evidence that the government's invocation of secrecy is quite malleable. That when it is trying to hold others accountable, like a Khalid Sheikh Mohammed... That's what I asked you about. I understand the argument that sometimes they do and sometimes they don't. Sometimes they invoke and sometimes they don't invoke. Sometimes they classify and sometimes they declassify. But that's the authority of the government to make classification decisions and to make decisions as to when it is in the national interest to keep things classified and when it's in the national interest to not to invoke the... declassify or not to invoke secrecy. Whether to try a case and how it's tried and how evidence comes in and whether to allow a bar to the complete trial of the case is fundamentally our business. Well, I think, Judge Kuczynski, to answer your question, there's a particular problem with that in the context of civil litigation that is aimed at achieving liability for government misconduct. That if the government retains entire control over what is classified and if what is classified is coextensive with what is a state secret, then really the job of this court is ministerial. It is to ask the director of the CIA what's classified. In this case, the director... No, no, I understand that. I understand that. What's wrong with that? I mean, classification authority is the government's. And I understand you think it's arbitrary and I understand it undercuts your lawsuit and I understand that you think it's not fair and all that, but so what? I mean, why don't you explain what legally is wrong with a government deciding to invoke secrecy in one case for whatever reasons, political, operational, or otherwise, and another case to decide to... And why isn't the remedy for that? You go to the political branches, seek an act of Congress, and seek compensation in that way. Well, I think where we may disagree, Judge Kuczynski, is that even though classification... I'm asking a question. Okay. You're making an argument. I'm just trying to figure out what is the punch of that argument. So when we all get done, what is the effect of this argument in our case? Well, I would boil it down like this. What may or may not be classified is not coextensive with what may or may not be a state secret. The government certainly has the authority to classify, although I would argue in the Exemption 1 context, the court doesn't have to defer whole ways, even to the government's classification decisions, and Congress made that clear in its amendment to the FOIA. But even if something is validly classified, that does not mean that the court has to consider it a state secret. And it's the court's independent job, exercising the court's independent article-free duties, as the government says in its brief, to decide whether a particular piece of evidence is a state secret. This is a new argument. I don't think I've seen it in the brief, but I may have missed it. So I just want to understand. It's a difficult case, and I don't blame you for being nimble and coming up with new arguments. But what you are saying is the government has authority to classify. You don't dispute that, and you can't dispute that, right? But we can decide that certain classified, we the court, can decide that certain classified materials don't amount to state secrets. Well, I think we did argue that. No, no. I'm not claiming waiver. I'm just trying to make sure I understand. More importantly, I think that was the crux of the panel's decision in this case. That those two issues are not coextensive, for the reasons that we discussed, that if the executive branch's classification authority were coextensive with the state secret's privilege, then there really would be almost no role for this court other than to read the CIA director's affidavit, and then to do what the CIA director says, because they obviously control what evidence is classified. They'll tell you what evidence is relevant to the case. And if they say you have to dismiss it, you dismiss it. You have to dismiss in every case. Now what Judge Hawkins said... Your position, though, is that even if classified information would have to be released in order to allow your lawsuit to go forward, we can decide to do that because some classified materials don't amount to state secrets. No, I mean the one word there that I take issue with is release. The court has all kinds of procedures at its disposal that would allow classified information to be reviewed, to be used, to be utilized without being released to the public, and there are proceedings every day. Let me make sure you understand the word release as I use it. Release means people get to know other than what the government decides is safe. If those people are judges, and that's exactly what I mean, and I think Reynolds is quite clear on that point that control over evidence in a case, decisions about what's relevant, what's going to be needed for litigation, cannot be abdicated to the executive. That's true. What do you do with the jury? That raises the additional point which says there are points at which the information is such that it can't be entrusted to even the judge sitting alone in chambers. And therefore my question proceeds from your assumption that there is some point at which a judge, more than acting ministerially, makes a value informed judgment, an informed value judgment, whatever, a legal judgment, a practical judgment that the government assertion of the sensitivity of this is credible. And therefore the court decides that it does not see how the case should proceed beyond where it currently is. Now in this case, we're talking about at the pleading stage, but just what you quoted from Blackwater, the statement about Blackwater, had an inherent ambiguity in it. That Blackwater is not at this time involved in blah blah blah. Well, if you're the plaintiff, you're going to want to take a deposition, send an interrogatory, something to follow up on that. Can the judge at that point say, all right, they've made the one statement, but the next step is going to lead us into an area where I as a judge cannot fault the government's assertion of privilege. It's the very next step and that cuts your case off right at the beginning in any event. So how do we deal with that? If the answer is, can a court make a determination after looking at the government's classified submissions and non-privileged evidence that plaintiffs are able to marshal that the case can't go forward because plaintiffs won't be able to make out a prime offense case or the defendant will be prevented from asserting a valid and not merely hypothetical defense, then the case is dismissed, Judge Fisher. That is the law and we have never taken issue with that and neither did the panel. My problem with doing that at this stage of the litigation is that it really requires clairvoyance. What if, though, you know, let's say you know that the plaintiff could put forth a prime offense case based on obviously you have your clients could testify, there's any number of things, so but assuming for argument's sake that Jefferson could not defend itself without getting into without a state secret problem, do you have to wait and spend everyone's money and everyone's time to get through the prime offense case even though, you know, I mean, you know in a lawsuit someone's going to defend themselves and it can't occur without running into that. That's what it seems. Is that preemptive? Or do you just waste everyone's money when you know that that's the end? Or is your argument that well, if we wait long enough, maybe the government will change their position? I mean because we have to decide it right now. Right. And my answer to that, Judge Callahan, is that it is black-letter law that if a defendant is prevented by virtue of the state secret's privilege from asserting an otherwise valid factual or legal defense, then the case is dismissed and that's one way in which the privilege works to the advantage of defendants as opposed to plaintiffs. And it could be now. And it could be now? Here's why it couldn't be right now because in order to assert, in order to determine whether that asserted defense was a valid one, in all fairness, the court would have to look at the non-privileged evidence that plaintiffs are able to marshal. So that if I mean we can imagine what one of their defenses is. If their defense is no one in our company had any idea what these flights were about, we were just asked to do a contract for the government and we have evidence from someone who worked for the company who tells quite a different story and is able to bring that forward, then it wouldn't be fair for you to make your determination just based on the assertion of the state secret's privilege. And so we still believe that it's not proper to make that determination until plaintiffs have been afforded the opportunity to present all non-privileged evidence. Do we know what Jefferson's defenses are? We don't because Jefferson has not had to file a single response to pleading in this case. Now, I anticipate certain legal defenses that Jefferson will raise that certainly don't require state secrets because they will assume our facts as true. But no, of course, we don't know what Jefferson's defenses are because the CIA jumps in front of them to assert the state secret's privilege. Counsel, if we accept your view regarding the proper application of Totten, does that require us to create a circuit split? And if your answer is no, explain why not. Well, Judge Rollinson, are you referring to the Fourth Circuit in particular in El Nasseri? Yes. Well, I think unfortunately... Among others. Yes. Well, I don't know about others. You know, I think the Supreme Court has been very clear in the two Totten cases that it's decided that those cases are predicated on the relationship between the plaintiff and the government and that you can tell a Totten case on the face of a complaint. You don't even need an assertion from the government to know that it's a Totten case. You don't need a claim of harm to national security. Totten itself was in 1875. The Civil War had been over for 10 years. So Totten really is about that relationship. Now, it's not easy for me to tell whether the El Nasseri case adopts a broader vision of Totten only because it seems to have ruled against it. You're familiar with it, right? With the El Nasseri case? I have had some dreams about that case. It seems that they invoked every... You're a counsellor, so they might be familiar to you. But I would say this, Judge Rollinson, that both this circuit and the D.C. Circuit have already rejected key elements of the El Nasseri decision. The D.C. Circuit, in a very important case, in Ray Field's case, said that El Nasseri was wrong in dismissing the case on the basis of hypothetical defenses. It went through a bunch of them rather than actual defenses. And the D.C. Circuit said, if you apply that standard, every state secrets case will have to be dismissed. And this court in the El Haramain panel decision said that the El Nasseri court had already conflated the very subject matter issue with the evidence needed to litigate the case. So it may be that the circuit split that you're concerned about already exists. But I will say this, the panel decision cannot be reconciled with El Nasseri because what the El Nasseri court did is something that would be plainly forbidden by the law as articulated by the panel in this case. So I think that that split may be unavoidable in this case, even if you were to follow El Nasseri. Could I ask you a question about your theories of relief under the Alien Tort Claims Statute? One is, you allege that Jefferson is liable directly, another for conspiracy, and another for aiding and abetting. What evidence do you believe you would need to discover about Jefferson in order to prove any one of those alternative theories? It's a fair question. I don't know the answer. Well, you've thought about it. We've thought about it. Because the complaint is, you know, it's about 80 pages or so. Well, not only have we thought about it, but in response to the government's motion to dismiss, we assembled whatever evidence we could at the time, in the short time that we had to respond. No, I'm talking about what evidence you might want to recover or obtain through discovery that you would need to prove one of these theories. Right. And again, it's quite possible that we would be able to make out our prima facie case on some of these theories, at least, without any discovery. Without any discovery. Without any at all. Well, you have to show at least a connection to the CIA, right? Well, I don't think that we need to show a connection to the CIA in particular. I think we certainly need to show... The United States, right? We need to show a connection to the states. That's exactly right. And how do you do that without invoking a relationship that the United States has not acknowledged? Well, I think that we've already presented a fair amount of evidence that makes clear that the United States was involved. Our plaintiffs, for example, at various places... I'm sorry, it was involved with Dependent Jefferson? No, no, no. With Dependent Jefferson, we have presented evidence in the form of a declaration from a former employee at Jefferson that it was openly discussed by senior officials in the company that Jefferson was doing the CIA's torture flights, in his words. That might very well be admissible under 801-D as an admission, and that might... You think that's enough? No, I don't think that's enough. I think that that is certainly enough for us to make out a prima facie case. We also have flight records and telexes. No, no. I think what Judge Pires was asking you about is not a prima facie case, but ultimately proving your case at all. What evidence you would need to prove a case at all. It's not just a prima facie case. You have to prove some relationship between Jefferson and the United States. If I understand correctly, it is that very relationship which is the secret. If it exists at all, it's a secret. Perhaps it doesn't exist. Perhaps it does exist. It either does not exist, in which case you lose, or it does exist, in which case it's a secret. Well, I agree with that, that if this court were to determine that Jefferson's role in all of these activities was a state secret, then there would be no way for us to prove our case. Because our case is about Jefferson's role in these activities. Now, can you say the word again? Yes. That if this court were to determine that Jefferson's role, Jefferson's role in any of the activities that we allege, not just his connection with the CIA, because as Judge Hawkins pointed out, not all of our claims depend on it. You're not making it very complicated. I'm going to make it very clear. If this court determines, in the face of all of the evidence that we've assembled, that Jefferson's role in these activities is a state secret, then there is no way for plaintiffs to prevail. So what happens once the letter gets up and says, the government asserts that, I mean, I don't want to tell you, I have no idea what he'll say, but let's say he stands up and says, we are certain by having a state that that relationship between, the alleged relationship between Jefferson and the United States is a secret. That's a different thing than I said, by the way. I said Jefferson's role in any of these activities, not the relationship between Jefferson and the United States, because I think we have claims that don't depend on that relationship. But, Judge Kuczynski, I want to say this. In order for the court to make that determination, I'm sorry, can you explain to me the difference between the two? Yes, that, for example, we have asserted a theory of reckless disregard, that Jefferson engaged in these activities, transporting these clients to these countries in these circumstances, with reckless disregard for whether they would face torture, knowing what they knew or should have known at the time. That does not require a contract or a relationship between Jefferson and the United States. But I want to make a slightly broader point. And that is, that before this court can make the determination that Jefferson's involvement is a state secret, it has to answer two questions. The first is, is it a secret? Is it a secret? And I don't think the answer to that is, if the government says it's a secret, it's a secret. I don't think that the government is allowed to do anything so long as it says that what it did was a secret. I think this court has to look at the evidence that's publicly available that we present, our testimonial evidence, our documentary evidence, evidence from foreign government reports, evidence from direct participants in these activities, including our plaintiffs, before making the first determination, is it secret? Number two, even if the court believes that there is a secret involved, it's not a state secret unless its disclosure would cause harm to national security. And the question is, at this point, knowing what the world knows or believes about Jefferson's role in these activities, how would litigation of that fact in this court cause harm to national security? And only after answering those two questions can the court say that it's a state secret. And in answering those questions, we have to be afforded the opportunity to present any non-privileged evidence that we have to counter the assertions of the director of the CIA. That's the part, it's the second step that I was asking about earlier on, and I'd like to come back to it because I think that is certainly for this judge the troublesome part. You talked about having to engage in hypotheticals. One knows how, as Judge Paius's question suggested, that when you go through litigation, it's an iterative process. You make a prima facie case, but that's judged with presumptions running in your favor. The government, the Jefferson has to come back and it has to rebut it. How does a trial judge sitting there trying to manage this put any controls on the process to make sure that in moving inching forward along the lines that the panel suggested that it doesn't reach a point where it inadvertently or the parties inadvertently wind up actually disclosing, which is indeed will be agreed upon by all, even maybe the plaintiffs, is truly a national secret? How do you draw that line? I think courts have done it in many cases, and in the final section of our brief in June of 2008, we laid out all kinds of procedures that courts have used to address precisely those issues. It may be that if there are depositions, they have to be done only in writing. It may even be that a trial will be in camera, that no jury could be permitted to participate in the trial. All of those are preferable to a premature dismissal before it's been attempted. I would just say that the risk of inadvertent disclosure in this case is very minimal, and that many of the cases that you read about, the Bareford case, the Zitterbaum case, involve plaintiffs or their experts who are in possession of classified evidence. Our plaintiffs are in possession of no classified evidence. The only possible disclosures could come from the other side, and I'm sure that the government and Jefferson will be quite careful about making sure that doesn't happen. Well, but how does the government really control Jefferson in that Jefferson obviously has an interest to defend itself? You're not suing the government at this point. You're suing Jefferson, and so Jefferson has moved from holding the bag here and being sued, and self-interest can be different. Or what if you assume for argument's sake that Jefferson doesn't understand the significance of certain things that it may know on some level? I think as we argued in one of our briefs, Judge Callahan, it's incumbent on the district court to fashion a procedure that at a minimum allows the government an opportunity to review Jefferson's submissions, because the government presumably knows the significance of everything, and that can be done. It could be filed under seal, where only the government sees it. It could be submitted to the government first. These are all things that can be done. I think that the notion that a case should be dismissed at the outset because some set of circumstances in the future might lead to some disclosure. I do think that it's premature. I think in a case of this importance, it is not a waste of judicial resources to attempt to give torture victims their day in court. I see I have just over a minute left, and I would like to reserve some time for rebuttal. Thank you. Okay. Thank you. Who's going to go first? Thank you. May it please the court, your honors. I'm Douglas Leder from the United States Department of Justice, and we urge affirmance in this case. With me today at council table is Mr. Michael Abbate, also from the Justice Department. Then we have Dan Collins, who represents Jefferson. Mr. Collins, as the letter we sent to the court says, Mr. Collins is available to answer the court's questions for five minutes if the court has questions for him. If not, he cedes his time to me. So as I say, if the court wishes to question him, he is available. Is state secrets an evidentiary privilege or an immunity doctrine? Your honor, you pressed that question with me at the panel argument, and the state secrets privilege is it's not an immunity doctrine. I can explain that if you wish. It is not simply an evidentiary privilege in the sense it covers evidence. And again, I know you pressed me on this quite a bit. It covers evidence. It covers fact. It covers material. It covers information. Many circuits have said this. In this case, this makes no difference which one of those things you call it. The plaintiffs in this case put about 800 pages of information in the record which they assert is non-secret, non-privilege, which they claim they can use to support their claims. Is that correct? Yes. Does the government assert state secrets as to any of that material? We do not. And did the district court look at that material and apply it to the prima facie elements of any of the claims in this case? My understanding is that the district court looked at all of the material. It looked at the material that was submitted by the plaintiffs. It looked at the material. I don't think you're answering my question. Did the district court look at that 800 pages of material and compare it to the elements of the claims in the complaint and determine whether or not the plaintiffs could prove a prima facie case? Your Honor, I don't know whether the court said specifically prima facie. It specifically said the contrary, didn't they? Didn't Judge Ware say there are three instances? One, where the entire subject matter is covered. Two, where the plaintiffs can't prove a prima facie case. And three, where Jefferson can't defend. And it specifically said I'm not addressing questions two or three. Only one. That is correct, isn't it? Yes, Your Honor. It did so because, as you well know, the district court said this case cannot be litigated. The district court said that it looked at various ways of doing it. That's precisely what was argued to the district court. Mr. Weisner made this very argument to the district court. He said, well, we can try this. We can try that. The district judge, who was actually going to have to try the case, said this cannot be done. This cannot work. What the district court was relying on, Your Honor, is precisely what many other circuits have done, including this one. This circuit and the others that have looked at state secrets cases have said that if state secrets information is central to the case, if it cannot be disentangled from the other information, then the case must cannot proceed. It must be dismissed. That's Farnsworth and Banks from the Fourth Circuit, Bareford from the Fifth Circuit, Edmonds from the D.C. Circuit, Black from the Eighth Circuit. This court said it in Al-Haramain. We're not asking you to do anything radical here. The declaration from the CIA director establishes that there cannot be any disentanglement here. The case cannot proceed without getting into state secrets and therefore it makes no sense to move forward with the case to hope for inadvertent disclosures. The district judge made no determination as to whether state secret applied to any piece of evidence, correct? That's correct, Your Honor. If the judge did, he didn't say so. You conceded here that none of the 800 pages in the excerpt of record are subject to the state secret. We have not asserted state secrets privilege over the plaintiff's evidence, plaintiff's statements outside court, the plaintiff's briefs. No, Your Honor. So if any individual judge of this court could sit down with that 800 pages and compare it to any one claim in the complaint and say there's enough here for a prima facie case, the case would have to go forward. Oh, no, absolutely not, Your Honor. This court itself has said no. We know that if the defendant cannot put on its case, then the case must be dismissed. And as I said a moment ago, the court's several circuits, this court's sister circuits have held if the state secret's information is central to the case or cannot be disentangled, the case must be dismissed. You know, that'd be great if the district court had gone to step two and three and said, okay, I've come to this conclusion on step one, but I'm going to go on. And on step two, I've looked at what the government might present, and I don't think they can make out a prima facie case. Or at step three, I don't think Jefferson can defend, but the district court didn't do that. The district court, I believe, did not, in the exact words that you're using, Your Honor, the district court said this case cannot be litigated. That's what the district court said. That is exactly the standard that has been used by this court and other circuits to dismiss state secret cases. And indeed, the central theme of my argument today is from the Supreme Court decisions that, again, this court has adopted. I'm not asking you to do that. Let me just make sure I understand. Let's say this court failed to do something. Isn't this the Nova Review? Aren't we in as good a position as a district court to make these determinations? Yes, Your Honor. Thank you. We're not somehow hobbled by, I mean, the district court, the district judge thought it was unnecessary to reach a certain step of analysis. On the Nova Review, we do the same work, right? That is correct. You moved alternatively for summary judgment when you filed your Rule 12B motion to dismiss. And doesn't Rule 12B give us the authority in consideration on summary judgment and the Nova Review to affirm the district court on any grounds supported by the record? Yes, exactly, Your Honor. And there is full support in the record here. And on a number of points that I want to get to in a second, the one thing, though, I did want to point out is the Supreme Court has said, and again, this court has quoted it, if I may just quote very briefly for a moment, public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to disclosure of matters which the law itself regards as confidential. That is exactly this case as shown by the declaration of the CIA director. And obviously, I have to be extremely careful in what I say publicly today. There are a number of things that Mr. Weissner said that I want to respond to. I can only do so in part in closed session, and I look forward to being able to do that. That statement... Oh, I'm sorry. Go ahead. Doesn't that statement depend on the theory on which the plaintiff ultimately pursued or their claims for relief? I don't think so, Your Honor. I think it applies to all three, all of their theories, because as if you look at the complaint, and I think this goes actually to the question Your Honor asked and Chief Judge Kucinich asked, if the plaintiffs want to proceed on a conspiracy theory, conspiracy requires that there be an agreement among the people who have done wrong. So at a minimum, on conspiracy, you have to show that the United States was involved with the plaintiffs and that it was doing some sort of clandestine program and rendering people to other countries, et cetera. So clearly, that gets right in the state secrets, I believe, Mr. Weissner. They had another theory, though, of reckless disregard. Right. Reckless disregard, however you are, you have to show that you were in reckless disregard of what? You can't just say, well, they were in reckless disregard. So reckless disregard of what? Well, the allegations, they knew that these individuals were being tortured where they were rendered. So at a minimum, you'd have to have that there was a rendition program, that they were being taken from Gambia and Pakistan, et cetera, taken to these other countries, Morocco, Algeria, Afghanistan. You'd have to show they were taken somewhere and bad either knew or, remember, reckless disregard. They really have to bury their head in the sand so that we'd have to have all sorts of information that we say Jefferson was disregarding. So we'd have to have that. Isn't what you just described and publicly stated? I thought you said he didn't object to what's out in the public. It's been stated publicly by the plaintiffs, by different parts of the media and by foreign governments. What they want is for, first of all, there are two problems. One is whether Jefferson can defend. But the assumption is that if these other people have said it, then it must be something that can be litigated. As we have pointed out- I'm not sure I understood that. It must be litigated. The fact is that the plaintiffs themselves can come in and testify as to what happened to them. There is general information about rendition programs and allegations of torture. That, you say, is not a state secret. So where in this process does the problem arise for the plaintiffs to say Jefferson people- they've got this statement of one of the Jefferson employees saying they were torture flights, apparently. Why isn't that enough for the plaintiff's case to make their case, that Jefferson obviously knew about what was at risk here? Two answers, Judge Fischer. One, nevertheless, at some point we get to the defendant's case, and if the defendant can't make its defenses, the case- We don't know what those defenses are yet. We- and again, I will be happy to go into this in the closed session. I cannot discuss it publicly. Well, at least in the briefs that have been filed, there's no hint of what the formal defense is. That's right. Jefferson has not stated exactly what- correct. I mean, I've looked through everything that's been provided for me, and I see nothing that suggests what Jefferson's defenses might be. Absolutely. And again, Your Honor, I can answer that question fully in closed session. Right. But as a matter of theory, as a matter of theory, shouldn't we have the defendant actually assert the defenses before we evaluate whether or not it impacts the state secrets doctrine? For example, Jefferson could come in, unlikely, and say, well, we have knit liability to reckless disregard, and then you go into the damage case. No state secret has been compromised. Your Honor, I have a direct answer to that. I cannot give it publicly. I'm happy to answer that specific question in the closed session, because I have a specific answer to that. Judge Fischer, the other problem with that is, even assuming that somehow we could make the case go forward, as we have said, part of the problem is confirmation by the United States government is a serious issue. And it's not just, in certain circumstances, confirmation by the executive branch. What the plaintiffs would be looking for is for a district court and this court to hold as a matter of law and fact that certain things happen. And that, in and of itself, then, can raise the precise problems that we're discussing. And again, I can go into more detail on that in closed session. I have a hypothetical for you. I don't think it'll require you to get into privileged information. But if it does, just say so in your response. Thank you. Suppose Jefferson had an agreement with the United States government to provide charter services. And while they were doing this, they were infiltrated by some representatives of a drug cartel. And in between other charter flights they were doing for the government, they used those charter services for the cartel to capture and torture drug informants. Could that case go forward? And so, in your hypothetical, I just need to find out, it's publicly known that Jefferson has a contract with the United States. That's it? Same. Let's just assume that Jefferson is providing a broad range of charter services to the United States government, some of which may be classified, some of which may not. And but they decide on their own that a way to make money is to help the Sinaloa drug cartel in their efforts to capture and torture drug informants. Could that case go forward? Could the victims of that go forward on a claim? Your Honor, as I hear that, that certainly wouldn't, the state secrets it sounds like would not be in any way central or difficult to disentangle, I don't think. Maybe as one litigated it, the district judge would find otherwise. But at least the way you presented it, I'm having trouble. That case would go forward on an evidence by evidence basis. Again, I... If it got to a point where a revelation of something that was covered by a proper assertion of the privilege stopped it, the case would stop, if not the case would go forward. I believe so. And it may very well be that certain information would be taken out of the case. But again, as you presented the hypothetical, it doesn't sound like this one where... What if I change Judge Hawkins' hypothetical and it turns out the DEA is involved in some of those tortures. So they decide the good way to fight the drug war is to have some of those people tortured. Again, I'm not... You've given Judge Hawkins your answer to his hypothetical. Would the change in hypothetical, as I've posed it, change your answer? If that were a state secret, that could change the answer, Chief Justice, in part... I'm not talking about the role of the DEA agents. Right. This wasn't something that our government decided to do. Right. And if the role of the DEA was determining the state secret, and let me emphasize, as we know, that the President and the Attorney General have made clear that the state secret's privilege will not be asserted simply to hide misconduct or things that are embarrassing or illegal activity. But if under those circumstances it were legitimately a state secret, then maybe the case couldn't go forward or maybe a part of it would cease. Can I understand what you just said? The President and the Attorney General have said that they will not assert state secrets to avoid embarrassment. But let's suppose that there are American citizens found in Pakistan who are tortured by the Pakistani intelligence, along with assistance from the United States Government, in violation of what the President declared to be against U.S. policy and against international law. Those U.S. citizens are then flown to the United States where, it turns out, is case of mistaken identity. They are flown on a plane where the torture continued, including threats to drop them out of the bay, drop them into the ocean so that they confess, and then found when they land in the United States. In that circumstance, where it would be a blatant violation of both the declaration against torture and international law, would the state secret's privilege be assertable if, in fact, to allow a suit against those parties, including the government, as well as any intermediary parties? Would they – would that preclude adjudication of it? MR CLEMONS I believe, under the President's policy, it would be very difficult to see how the privilege would be asserted in those circumstances, Your Honor. I believe that — MR GOLDSTEIN It might very well be, Your Honor, that some sort of privilege would still be asserted even under the President's policy. Obviously, it's very difficult to talk about these in simply a hypothetical. And in addition, as you know, the privilege itself is asserted by – not by people like me. It's asserted by the head of a department. QUESTION But it still leaves it to the executive branch and the executive who happens to occupy that seat at the time. And what – the question is, what law does this case generate that's going to apply to another administration who may take a different view of all of these? MR CLEMONS Your Honor is correct. It means that it is given to the executive, and that's – the Supreme Court has made it absolutely clear that the power to assert the privilege is given to the executive. This Court and all Article III judges with jurisdiction then have a – it's not simply a ministerial role. It is an extremely important, independent III power to determine that the privilege has been validly asserted. That's why we present in cases like this very lengthy materials to explain to the judge, as we did here with Judge Ware and Your Honors, exactly why the privilege is being asserted. But to make it sound like this Court's role as ministerial is just dead wrong. QUESTION In this case, just to be clear, the privilege was asserted in one administration. It's going to be asserted by the next administration. MR CLEMONS Yes. QUESTION Just a fact from my – it has been affirmatively  MR CLEMONS No, Your Honor. I'm sorry. I didn't hear you quite right. No. The current administration has not reasserted the privilege. What the administration has done is that the current assertion of the privilege was not reviewed under the Attorney General's new guidelines. But instead, the Justice Department determined at the highest levels that the state secrets claim here substantively satisfy the new standards, and there's no doubt about the risk of great harm. And so the Justice Department, the current Justice Department, at the highest levels is comfortable with the degree of the factual support here. In addition, the current – because Mr. Weissman was making it sound like, well, maybe things are different at the DCF. QUESTION Can you explain to me what the difference is between doing what you just explained and reasserting the privilege? MR CLEMONS Yes, Your Honor. The Attorney General announced not long ago a new policy on the assertion of the state secrets privilege, which requires certain procedures. Those procedures – if we were going to reassert the privilege, we would follow those procedures. Those procedures were not followed here because the Attorney General made a broad judgment that we would not go back and review all – under those procedures, all of the currently existing state secrets claims. But obviously, before somebody like me stands up in court, the Justice Department is going to – and the agency is going to review somebody like this at the highest levels to make sure that this is still the position of the Justice Department, and that's – and that was – he's correct. QUESTION The Attorney General could choose not to – not to assert the privilege, right? MR CLEMONS Could decide not to defend the privilege, yes. QUESTION In this case? MR CLEMONS Correct. And so the privilege was asserted in the last administration. New administration comes in, a new president, a new attorney general, a new head of department. The department would be the – MR CLEMONS The CIA. MR CLEMONS The CIA. And all three of those have continued to assert the privilege. MR CLEMONS That's exactly right, Your Honor. QUESTION Mr. Lutter? MR CLEMONS Yes. QUESTION Can I ask a question? If I got Mr. Wisener correctly – and correct me if I didn't get you correctly – he says that if the Jefferson role is a state secret, the plaintiff loses. Do you agree with that? MR CLEMONS Absolutely, Your Honor. QUESTION And do you agree that – what is secret about Jefferson's role? MR CLEMONS Your Honor, the – and again, I cannot speak much about this in this open proceeding. I would be happy to explain. QUESTION But you assert that the role of Jefferson is a state secret. MR CLEMONS Yes. The – I'm sorry. The CIA director's public declaration of privilege states that expressly, whether there's any relationship between Jefferson and the United States Government. QUESTION The word role is ambiguous. I think that you're – you keep talking about relationship, but clearly what – much of what Jefferson did is not a state secret, right? MR CLEMONS Well, we're not confirming or denying that it's a state secret. QUESTION Well, in terms of what is alleged to have been done, I thought – and what these people know happened to them can't be – isn't really what they say happened to them. It's not a state secret. MR CLEMONS Your Honor, as I answered Judge Hawkins, I can give you the same answer. Plaintiffs have alleged things – their allegations – the fact they've made these allegations – no, it's not a state secret at all. What – as I say, the United States Government will neither confirm nor deny whether there is any relationship between the United States Government and Jefferson concerning – in general, but in particular also concerning these allegations. And that – again, in the closed session, I can explain fully why that is absolutely essential here to understand. QUESTION Assuming that these people were – these or writing reasons of national security, the Administration decides that the case cannot, then said, be litigated, do the – is that the end of the road for people who have been mistreated? Or are there other remedies in the process, non-judicial remedies? MR CLEMONS Absolutely, Your Honor. And this is an essential point. I'm very pleased that you asked that. There – as we have made clear, there are other remedies. One is private legislation that the – Your Honors have discussed today. There are IG, inspector general – there's a very important role for inspectors general. There's congressional oversight. There is – can be criminal prosecutions if the Justice Department determines that matters should be criminally prosecuted. And so, no, this is – and there's the political process in general. Obviously, if an administration engages in conduct that the world denounces, clearly that can have an impact on the domestic political relations in the United States. So does this mean that this litigation goes forward? Unfortunately, no. This is a harsh remedy. We recognize that. That's why this is for the most rare instances. But as the courts have recognized – and this goes back to one of the cases that the Supreme Court determined was quite important in development of the doctrine, the state secrets doctrine, the British case, Duncan v. Cromel. And there, the British House of Lords makes clear that in these rare circumstances, it is more important for the society to have litigation not go forward. But there are other mechanisms. There are – there are allegations made in a complaint here by plaintiffs. There is no confirmation or denial whether this did or didn't happen. If there are people who are in the United States Government who engage in torture, there is, of course, a possibility of prosecution. And in fact, it's publicly known that the Justice Department is itself investigating possible allegations of – QUESTIONER 1 If the criminal side of the Department of Justice conducted an investigation and determined that officials of Jefferson and officials of the Central Intelligence Agency or other agencies of the government had engaged in torture and were worthy of prosecution, they could go forward with that case? MR. BOUTROUS Yes, Your Honor. And this – QUESTIONER 1 And the case would be tried on an evidence-by-evidence basis? MR. BOUTROUS Yes, Your Honor.  QUESTIONER 1 The government certainly wouldn't assert state secrets as an immunity doctrine. MR. BOUTROUS You are – a couple of things. First of all, it's not an immunity doctrine. But second, as Your Honor well knows, the decision would be made by the attorney general, the exact same official. There aren't two parts of the Justice Department, just like this. There is the attorney general. The attorney general can decide in criminal matters to have classified information be declassified for the broader public interest. So for example, the Moussaoui prosecution, if Moussaoui had not pled guilty, there was all sorts of material that would have to be declassified because a criminal prosecution must take place in public. The Supreme Court in Reynolds made clear – it's explicit in the opinion – that the state secrets privilege is a civil matter. It is not criminal where the United States is trying to put somebody in jail. When the United States is putting somebody in jail, we must make a decision. The attorney general must make a decision in consultation with high-level officials from the intelligence community should this prosecution go forward. There is often conflict, Your Honor. There is often disagreement. The intelligence community may want to keep certain materials still secret, but a decision is made at a higher level. We're going to move forward with a prosecution. Now, there's SIPA. OPERATOR Well, if that happens and then the court orders you to turn things over that you don't want to turn over, then what? You face sanctions, a dismissal, and a criminal case.  GOLDSTEIN Exactly, Your Honor. OPERATOR Is that right? MR. GOLDSTEIN That's precisely right. And that's why Your Honor asked about the KSM, the Khalid Sheikh Mohammed situation. The attorney general obviously believes that that prosecution can move forward on the basis of non-state secrets material. Obviously, sometimes you get into very difficult judgments about grating material, et cetera, but that's a decision that the attorney general in consultation can make. The attorney general has made the opposite decision here and said that this case legitimately involves state secrets material that cannot and should not be disclosed. So those are— OPERATOR Just to be clear then, when you have cited all the avenues, alternative avenues, those are all largely at the discretion of the executive ultimate? MR. GOLDSTEIN Except— OPERATOR Except a private bill. MR. GOLDSTEIN —private bill. That's right, Your Honor. Yes. OPERATOR And congressional oversight— MR. GOLDSTEIN I'm sorry. OPERATOR And congressional oversight and political accountability. MR. GOLDSTEIN Yeah. I realized that as I thought more about it, I think the four mechanisms I said, actually only one of them is within the executive. Thank you, Judge Tallman. OPERATOR I take notes. MR. GOLDSTEIN A couple of things that Mr. Watson said that it's extremely important that I discuss. One, my friend said that we're making a categorical argument about confirmations and out. That is not true. We are making an argument in this specific case based on the declaration from the CIA director. That is all that we are arguing here. We are not arguing that things can or cannot generally be confirmed or denied. Mr. Weissner said that I think he was making it sound like our argument is classification equals secret. That's not our argument today. Obviously, something can't be classified unless it should be kept secret. But that's not what we're arguing. This is a state secrets case. And as you know, classification decisions are made by sometimes mid-level people in agencies. A state secrets determination can be made only by the head of the department that owns the information. So these are two completely separate things. There's litigation sometimes that involves classified material and decisions have to be made about what to do with it. That has nothing to do with a state secrets claim here. The CIA director is determined, fully supported by the Justice Department, that key evidence here is a state secret. Whether it's classified or not is not the issue. And in fact, state secrets claims, we have asserted state secrets in a particular case over non-classified material. It's not public information, but it's not classified. Mr. Weissner said, well, let's move forward and the district court can craft means of making sure that classified information does not come out. Again, I can't go into the details now, but I'm happy to go into the details in a closed session to explain exactly why that cannot work in this case, as the district court found. Okay. Close up? I'm sorry. Can you close? Oh, I'm sorry. Your Honors, as I said, we urge that the judgment of dismissal be affirmed, which we think can legitimately be done based on the information in the CIA director's declaration. And in doing so, this court will not be setting any new law. It will be following law, both of this circuit and of a number of the sister circuits. Thank you, Your Honors. Thank you. Before we close, does any of my colleagues have a question of Mr. Collins on behalf of who is representing Jefferson? Mr. Collins, you have the hook. I didn't see anybody. May I make two brief points, Your Honors? You may have a minute. Just first to underscore the fact that the viability of these claims under the Alien Tort Statute has not been tested and is not conceded. The panel assumed that a recklessness theory was viable because no 12B6 has been filed. That cause of action, we would submit, does not even exist. And if it does exist, it's got a lot more elements than recklessness to it. But as we indicated in our brief, if that becomes a factor that needs to be decided, then that is to be decided in the district court in the first instance with an appropriate motion. And the second point I would just make briefly is that Mr. Wisner said that the In Re Seal case says that there always has to be an in-camera review of specific defenses. That's not quite correct because it does distinguish expressly Al-Masri as presenting a different case, which, of course, is much closer to this case, where any conceivable defense would necessarily trench upon the secrets. And therefore, it acknowledges that there's a different standard. I have a question. Yes. You concede, did I hear you correctly, that there was no motion directed toward the new or should have known theory that's not been tested, and that's for the district court to determine in the first instance? We filed no response to the complaint, not 12D6, nothing. We have not been heard from as to the viability of these claims. It is not conceded. I don't think that the complaint and then the panel opinion, which I think, given the unusual procedural posture of the case, had to take the complaint at face value. I don't think that consistent with SOSA, that claim exists. Thank you. I'll work on your time of four minutes. Thank you. Thank you very much. And for the record, I wish we were here discussing the Alien Towards Statute and not the State Seeker's Privilege, but that is the lawsuit that we brought. I wasn't expecting to hear so much discussion about private bills, but I want to talk about a public bill, and that's the one that Mr. Collins just discussed, and that's an Act of Congress, the Alien Towards Statute. There are others, the Torture Victims Protection Act. The government's argument that for this court to enforce prohibitions against torture would be intruding into the political realms, I think, turns that on its head. In fact, it would be subverting the judgments of the political branches that this kind of conduct should be illegal in all circumstances. I thought the exercise in hypotheticals was very interesting, and I think that if you replace the allegations of our complaint by making the plaintiffs U.S. citizens and turning the torture into murder, I do not see how the government's argument could be any different at all, as I think this can be pointed out in the panel discussion. The cases that Mr. Letters cited, Edmonds, another one that I know too well, Farnsworth, Bareford, again, these are all cases where the plaintiffs themselves were in possession of classified evidence by virtue of their relationship to the government, and I think that's quite different, and I think it's a different category of case. I think that Mr. Letters said that the existence of a rendition program is a state secret, and I'm prepared to respond to that, but I hope that after the submissions that we made, I don't have to in any great detail. He also indicated that it is not only that the defendant and the government cannot be compelled to confirm or deny allegations, but that even a finding by this court without requiring them to do that would harm national security, that what the government is saying is that this court cannot reach a judgment about the facts presented to it, and that is a justiciability doctrine, pure and simple, and I would just say that this court quite much does the same thing when it comes to the practices of other countries in asylum cases, and the executive branch does the same thing when every year the State Department publishes reports about these countries. Mr. Letters mentioned the Moussaoui prosecution. I think it supports our point and not theirs. If the government had enough evidence to prosecute Binyam Mohamed, our plaintiff, then they would have found a way to fashion a proceeding. They began to do so at Guantanamo. The fact that they don't have evidence against him means that he's not able to go into court and seek any remedy. So it really is the government's interests that dictate the secrecy results, and I will just close by saying that eight years ago this week, our plaintiff, Ahmed Agiza, was abducted off the street, closed in a diaper, chained to the floor of a plane, flown to Egypt, and strapped to a wet mattress where he was tortured with electricity. And in the ensuing eight years, there's been an extraordinary national debate about the legality of the Bush Administration's rendition and detention and interrogation policies. But one voice has been entirely absent from that debate, and that is the judiciary. In those eight years, we've not had a single ruling on the legality of those actions. In our system, the question of whether executive branch conduct is legal is for the courts and not the CIA director to decide. If we were going to eventually get it, your decision is obviously it's not appropriate to dismiss at this point. But if it would appear to the court that it would be an inevitable that a dismissal would have to occur, why wouldn't what went on up to that point be a show trial, as it were, and why is – you know, is that what we want here?  BOUTROUS. I think what I question in that – in your question, Judge Callahan, is how you reach that inevitability decision. And if you make that decision without looking at all the evidence that can be presented and not just the one-sided assertions of someone who is, in fact, affiliated with the perpetrators here, then you are making that determination on an incomplete record. Well, so if I understand, your position is that it never could be made at this stage. Well, there are categories where it can be made, and we know that from the TANF decision, and we know that from the Taunton decision. They relate to the relationship between the plaintiff and the defendant and the nature of the claim. But in a case like this, no, plaintiffs should always be permitted to present whatever non-privileged evidence they're able to marshal, and the case should be dismissed only if not the court believes that it might be futile. But the court determines, based on the record, that the plaintiff cannot make out an element of his case or the defendant is absolutely prevented, as a matter of law or fact, from presenting a valid and not merely a hypothetical defense. Thank you. We are finished with the public session. We're going to retire to our conference room. And just so the record is clear, the court will meet with government counsel in secret session, where we will be able to discuss matters that are classified. So we are in recess.
judges: Kozinski, Schroeder, Canby, Hawkins, Thomas